IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| CIT TECHNOLOGY FINANCING SERVICES, INC. | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| DEPRIEST, INC. | )<br>) |
| Defendant. | ) |

CASE NO. 3:07CV670-WKW

## COMPLAINT

COMES NOW, the Plaintiff, CIT Technology Financing Services, Inc. ("CIT"), and states its cause of action as follows:

1. The Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

2. CIT is a corporation organized and existing pursuant to the laws of the State of Massachusetts.

3. Upon information and belief, Defendant DePriest, Inc. (hereinafter "DePriest") is a corporation organized and existing pursuant to the laws of the State of Alabama with its principal place of business in Auburn, Alabama.

4. This matter does not involve consumer debt.

### FACTUAL AVERMENTS

5. CIT re-avers and adopts paragraphs 1 through 3 and incorporates the same by reference as if set out fully and specifically herein.

6. On or around July 22, 2006, DePriest entered into a lease agreement with CIT under which CIT agreed to purchase certain commercial copying, scanning and document processing equipment in consideration for DePriest's commitment to lease that equipment from

CIT at a fixed monthly rental rate of $1,607.25 for 60 months. The lease contract entered between CIT and DePriest related to this equipment gave DePriest the option, at the end of the lease term, to purchase the leased equipment for $1.00. A true and correct copy of the DePriest/CIT lease contract is attached hereto as Exhibit "A."

7. On information and belief, DePriest intended to and has, since delivery of the equipment it contracted to lease from CIT, used the leased equipment in connection with the business enterprise it operates under the name of American Speedy Printing.

8. The original gross contract amount of the lease between DePriest and CIT was $96,435.00 and, as stated previously, was for a term of 60 months with a monthly payment of $1,607.25.

9. After the CIT/DePriest lease commenced in July 2006, DePriest made two timely monthly lease payments and then made additional late payments (not including payments made by checks which were returned), with its last late payment made in March 2007, eight months into its 60 month lease term. Since march 2007, DePriest has made no additional lease payments despite numerous requests and demands by CIT that it do so.

10. The total accelerated rent amount currently due from DePriest under its lease agreement with CIT, excluding late charges, interest, attorney's fees, and costs is $88,223.76, which includes $6,437.05 in use taxes and $900.06 in property taxes.

## COUNT I
### (Breach of Contract)

11. CIT re-avers and adopts paragraphs 1 through 9 above, and incorporates the same by reference as if set out fully and specifically herein.

12. CIT avers that DePriest has breached the lease contract attached hereto as Exhibit "A" by failing to make payments to CIT as required by the parties' lease contract as payments came due. Accordingly, DePriest is presently in default under the terms of the parties' lease and the full balance as accelerated and discounted pursuant to the terms of the lease, and is now due and owing to CIT.

13. As a result of defendant's breach, CIT has been deprived of the benefit of its contract with DePriest.

WHEREFORE, the above premises considered, CIT demands judgment against DePriest, Inc. in the amount of Eight-Eight Thousand, Two Hundred Twenty-Three Dollars and 76/100 ($88,223.76), plus prejudgment interest which continues to accrue, late fees, costs of court, reasonable attorney's fees, and such other, further and different relief to which CIT may prove itself entitled.

## COUNT II
### (Detinue)

14. CIT re-avers and adopts paragraphs 1 through 12 above, and incorporates the same by reference as if it set out fully and specifically herein.

15. Under the express terms of the lease contract DePriest entered with CIT, based on DePriest's default, CIT is entitled to require DePriest to deliver the leased equipment to CIT or entitled to peacefully repossess the leased equipment.

16. Upon information and belief, the equipment which is the subject of the lease attached hereto as Exhibit "A" is presently located at 1625 East University Drive, #112, Auburn, Alabama 36830-5239.

WHEREFORE, the above premises considered, CIT requests an order requiring DePriest to surrender and deliver, at its expense, the equipment identified in Exhibit "A" attached hereto, complete with all accessories, and that CIT be additionally awarded its costs and damages all in accordance with the contract, including attorney's fees, and such other and further relief as this Court deems appropriate.

                                                                             Douglas L. McCoy

**OF COUNSEL:**

HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama 36601
(251) 694-6224
Fax: (251) 544-1623
Email: dmccoy@handarendall.com

                                                              Benjamin S. Goldman
                                                              Attorneys for the Plaintiff

HAND ARENDALL, L.L.C.
1200 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
(205) 324-4400
Fax: (205) 387-1303
Email: bgoldman@handarendall.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL**

DePriest, Inc.
c/o Clifford DePriest, Registered Agent
2055 Kingsbury Drive
Montgomery, AL  36106

---

The attached Corporate Disclosure Statement is being served via certified mail along with this Summons and Complaint.

---

0197170/647127_1

- 4 -

# CIT LEASE AGREEMENT

TO OUR VALUED CUSTOMER: This Lease has been written in "Plain English." When we use the words you and your in this Lease, we mean *you, our customer*, which is the *Lessee* indicated below. When we use the words we, us, and our in this Lease, we mean the *Lessor*, CIT Technology Financing Services, Inc., our address is P.O. Box 1638, Livingston, NJ 07039.

| CUSTOMER INFORMATION | Lessee Name: DePriest, INC. | Tax ID#: 63-1062434 | Approval # |
| --- | --- | --- | --- |
| | Billing Street Address/City/County/State/Zip: 1625 East University Drive Auburn, AL 36830 | | Lease # |
| | Equipment Location (if different from above) | Lessee Phone No. (334) 887-3180 | Customer # |

| SUPPLIER INFORMATION | Supplier Name: Service Technologies 1284 Logan Circle NW Atlanta, GA 30318 | Supplier Phone No: (404) 355-6262 | ("SUPPLIER") |
| --- | --- | --- | --- |

| EQUIPMENT DESCRIPTION | Quantity: (1) | Make/Model: Xerox DocuTech 135 System with On Line Tape Binder, Finisher & Scanner | Serial Number: W11-031062 |
| --- | --- | --- | --- |

| PURCHASE OPTION | Check one applicable box. If no box is checked or if more than one box is checked, the Fair Market Value Purchase Option will apply. ☐ Fair Market Value  ☒ Fixed Price of $ 1.00  ☐ Fixed Price of ____% of the Total Cash Price | PLUS APPLICABLE TAXES |
| --- | --- | --- |

| TERM AND LEASE PAYMENT SCHEDULE | Initial Lease Term (Months): 60 | Lease Payment: $1,607.25 | You agree to pay at the time you sign this Lease: A) Total Advance Lease Payment ___ (Mo.) = $ 0  B) Sales/Use Tax on Advance Lease Payment = $ 0  C) One-time Document Fee = $ 75.00  D) Total of A+B+C = $ 75.00  If more than one Lease Payment is required in advance, the additional amount will be applied at the end of the initial or any renewal term. | PLUS APPLICABLE TAXES |
| --- | --- | --- | --- | --- |
| | Additional Provisions: None | | | |

**INSURANCE & TAXES**: You are required to provide and maintain insurance related to the Equipment, and to pay any property, use, and other taxes related to this Lease or the Equipment (see Sections 4 and 6 on the back of this Lease). If you are tax-exempt, you agree to furnish us with satisfactory evidence of your exemption.

**TERMS AND CONDITIONS**: BY SIGNING THIS LEASE: (I) YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THE TERMS AND CONDITIONS ON THE FRONT AND BACK OF THIS LEASE; (II) YOU AGREE THAT THIS LEASE IS A NET LEASE THAT YOU CANNOT TERMINATE OR CANCEL, YOU HAVE AN UNCONDITIONAL OBLIGATION TO MAKE ALL PAYMENTS DUE UNDER THIS LEASE, AND YOU CANNOT WITHHOLD, SET OFF OR REDUCE SUCH PAYMENTS FOR ANY REASON; (III) YOU WILL USE THE EQUIPMENT ONLY FOR BUSINESS PURPOSES; (iv) YOU WARRANT THAT THE PERSON SIGNING THIS LEASE FOR YOU HAS THE AUTHORITY TO DO SO AND TO GRANT THE POWER OF ATTORNEY SET FORTH IN SECTION 7 OF THIS LEASE; (v) YOU CONFIRM THAT YOU DECIDED TO ENTER INTO THIS LEASE RATHER THAN PURCHASE THE EQUIPMENT FOR THE TOTAL CASH PRICE; AND (vi) YOU AGREE THAT THIS LEASE WILL BE GOVERNED BY THE LAWS OF THE STATE OF NEW JERSEY AND YOU CONSENT TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN NEW JERSEY. YOU AND WE EXPRESSLY WAIVE ANY RIGHTS TO A TRAIL BY JURY.

**FAX EXECUTION**: A fax version of this Lease when received by us shall be binding on you for all purposes as if originally signed. However, the Lease shall only become effective and binding against us when originally signed by us. You agree that the only version of the Lease that is the original for all purposes is the version containing your fax signature and our original signature. You waive notice of our acceptance of this Lease and receipt of a copy of the originally signed Lease.

CIT TECHNOLOGY FINANCING SERVICES, INC.
Lessor X _____ Authorized Signature
Print Name & Title: EMMA CAPPELLETTI
VP/ATTORNEY IN FACT

Lessee: DePriest, Inc.
X _____ Authorized Signature
Print Name & Title: Doyle DePriest President  7/22/06

## PERSONAL GUARANTY

THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS. When we use the words you and your in this Personal Guaranty, we mean the Personal Guarantor(s) indicated below. When we use the words we, us, and our in this Personal Guaranty, we mean CIT Technology Financing Services, Inc., the Lessor identified in the Lease.

In consideration of our entering into the lease agreement identified above ("Lease"), you unconditionally and irrevocably guarantee to us, our successors and assigns the prompt payment and performance of all obligations of the Customer identified above ("Lessee") under the Lease. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Lessee or against the equipment covered by the Lease. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the Lease and you will be bound by such changes. If the Lessee defaults under the Lease, you will immediately perform all obligations of the Lessee under the Lease, including, but not limited to, paying all amounts due under the Lease. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Lessee. This is a continuing guaranty which will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Lessee in the event you must pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary. THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF NEW JERSEY. YOU CONSENT TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN NEW JERSEY. YOU EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY.

X _____
Personal Guarantor (no title)
Print Name _____ Date ____
Home Street Address/City/State/Zip
Social Security Number  ( ) Phone Number

X _____
Personal Guarantor (no title)
Print Name _____ Date ____
Home Street Address/City/State/Zip
Social Security Number  ( ) Phone Number

**Exhibit A**

CIT (2100/0201)

Case 3:07-cv-00670-WKW-TFM   Document 1-2   Filed 07/23/2007   Page 2 of 2

(Page 3 of 21)

1. **LEASE; DELIVERY AND ACCEPTANCE.** You agree to lease the equipment described on the front of this lease agreement (collectively "Equipment") on the terms and conditions shown on the front and back of this lease ("Lease"). You will arrange for the delivery of the Equipment to you. When you receive the Equipment, you agree to inspect it to determine if it is in good working order. This Lease will begin on the date when the Equipment is delivered to you. The Equipment will be deemed irrevocably accepted by you upon the earlier of: a) the delivery to us of a signed Delivery and Acceptance Certificate (if requested by us); or b) 10 days after delivery of the Equipment to you if you previously have not given written notice to us of your non-acceptance. The first Lease Payment is due on or before the date the Equipment is delivered to you. If the Equipment has been accepted by you in accordance with this Section 1, the remaining Lease Payments will be due on the day of each subsequent month (or such other time period stated on the front of this Lease) specified by us. You will make all payments required under this Lease to us at such address as we may specify in writing. You authorize us to adjust the Lease Payment by not more than 15% if the actual Total Cash Price (which is all amounts we have paid in connection with the purchase, delivery and installation of the Equipment, including any trade-up and buyout amounts) differs from the estimated Total Cash Price. If any Lease Payment or other amount payable to us is not paid within 10 days of its due date, you will pay us a late charge not to exceed 7% of each late payment (or such lesser rate as is the maximum rate allowable under applicable law).

2. **NO WARRANTIES.** We are leasing the Equipment to you "AS-IS". YOU ACKNOWLEDGE THAT WE DO NOT MANUFACTURE THE EQUIPMENT, WE DO NOT REPRESENT THE MANUFACTURER OR THE SUPPLIER, AND YOU HAVE SELECTED THE EQUIPMENT AND SUPPLIER BASED UPON YOUR OWN JUDGMENT. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE. YOU AGREE THAT REGARDLESS OF CAUSE, WE ARE NOT RESPONSIBLE FOR AND YOU WILL NOT MAKE ANY CLAIM AGAINST US FOR ANY DAMAGES, WHETHER CONSEQUENTIAL, DIRECT, SPECIAL, OR INDIRECT. YOU AGREE THAT NEITHER SUPPLIER NOR ANY SALESPERSON, EMPLOYEE OR AGENT OF SUPPLIER IS OUR AGENT OR HAS ANY AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY WAY. We transfer to you for the term of this Lease any warranties made by the manufacturer or Supplier under a Supply Contract.

3. **EQUIPMENT LOCATION; USE AND REPAIR; RETURN.** You will keep and use the Equipment only at the Equipment Location shown on the front of this Lease. You may not move the Equipment without our prior written consent. At your own cost and expense, you will keep the Equipment eligible for any manufacturer's certification, in compliance with all applicable laws and in good condition, except for ordinary wear and tear. You will not make any alterations, additions or replacements to the Equipment without our prior written consent. All alterations, additions and replacements will become part of the Equipment and our property at no cost or expense to us. We may inspect the Equipment at any reasonable time. Unless you purchase the Equipment in accordance with a purchase option granted to you on the first page of this Lease, within 10 days of the expiration of this Lease, you will immediately deliver the Equipment to us in good condition and repair, except for ordinary wear and tear, to any place in the United States that we tell you, and upon our request, you will provide us with a certification from the manufacturer or its authorized representative as to the Equipment's condition. You will pay for all expenses of deinstalling, crating and shipping, and you will insure the Equipment for its full replacement value during shipping.

4. **TAXES AND FEES.** You will pay when due, either directly to the applicable taxing authority or to us upon our demand, all taxes, fines and penalties relating to this Lease or the Equipment that are now or in the future assessed or levied by any state, local or other government authority. We will file all personal property, use or other tax returns (unless we notify you otherwise in writing) and you agree to pay us a fee for making such filings. We do not have to contest any taxes, fines or penalties. You will pay estimated property taxes with each Lease Payment or annually, as invoiced.

5. **LOSS OR DAMAGE.** As between you and us, you are responsible for any loss, theft or destruction of, or damage to the Equipment (collectively "Loss") from any cause at all, whether or not insured, until it is delivered to us at the end of this Lease. You are required to make all Lease Payments even if there is a Loss. You must notify us in writing immediately of any Loss. Then, at our option, you will either (a) repair the Equipment so that it is in good condition and working order, eligible for any manufacturer's certification, or (b) pay us the amounts specified in Section 8(b) below.

6. **INSURANCE.** You will provide and maintain at your expense (a) property insurance against the loss, theft or destruction of, or damage to the Equipment for its full replacement value, naming us as loss payee, and (b) public liability and third party property insurance, naming us as an additional insured. You will give us certificates or other evidence of such insurance when requested. Such insurance will be in a form, amount and with companies acceptable to us, and will provide that we be given 30 days advance notice of any cancellation or material change of such insurance. If you do not give us evidence of insurance acceptable to us, we have the right, but not the obligation, to obtain insurance covering our interest in the Equipment for the term of this Lease, including any renewal or extensions, from an insurer of our choice, including an insurer that is our affiliate. We may add the costs of acquiring and maintaining such insurance, and our fees for our services in placing and maintaining such insurance (collectively, "Insurance Charge") to the amounts due from you under this Lease. You will pay the Insurance Charge in equal installments allocated to the remaining Lease Payments. If we purchase insurance, you will cooperate with our insurance agent with respect to the placement of insurance and the processing of claims. Nothing in this Lease will create an insurance relationship of any type between us and any other person. You acknowledge that we are not required to secure or maintain any insurance, and we will not be liable to you if we terminate any insurance coverage that we arrange. If we replace or renew any insurance coverage, we are not obligated to provide replacement or renewal coverage under the same terms, costs, limits, or conditions as the previous coverage.

7. **TITLE; RECORDING.** We are the owner of and will hold title to the Equipment. You will keep the Equipment free of all liens and encumbrances. Unless the Purchase Option price shown on the front of this Lease is $1.00, you agree that this transaction is a true lease. However, if this transaction is deemed to be a lease intended for security, you grant us a security interest in the Equipment (including any replacements, substitutions, additions, attachments and proceeds). You will delivery to us signed financing statements or other documents we request to protect our interest in the Equipment. YOU AUTHORIZE US TO FILE A COPY OF THIS LEASE AS A FINANCING STATEMENT AND FILE AT ANY TIME, FINANCING STATEMENTS COVERING THE EQUIPMENT. YOU HEREBY RATIFY AND AUTHORIZE ANY SUCH FILINGS WE MAY MAKE BEFORE YOU SIGN THIS LEASE.

8. **DEFAULT.** Each of the following is a "Default" under this Lease: (a) you fail to pay any Lease Payment or any other payment within 10 days of its due date; (b) you do not perform any of your other obligations under this Lease or in any other agreement with us or with any of our affiliates and this failure continues for 10 days after we have notified you

CIT (2100/0201)

of it; (c) you become insolvent, you dissolve, you assign your assets for the benefit of your creditors, you sell, transfer or otherwise dispose of all or substantially all of your assets, or you enter (voluntarily or involuntarily) any bankruptcy or reorganization proceeding, (d) without our prior written consent, you merge or consolidate with any other entity and you are not the survivor of such merger or consolidation; (e) any guarantor of this Lease dies, does not perform its obligations under the guaranty, or becomes subject to one of the events listed in clause (c) of this Section 7.

9. **REMEDIES.** If a Default occurs, we may do one or more of the following: (a) we may cancel or terminate this Lease and any or all other agreements that we have entered into with you; (b) we may require you to immediately pay us, as compensation for loss of our bargain and not as a penalty, a sum equal to (i) the present value of all unpaid Lease Payments for the remainder of the term plus the present value of our anticipated residual interest in the Equipment, each discounted at 5% per year, compounded monthly, plus (ii) all other amounts due and to become due under this Lease, (c) we may require you to deliver the Equipment to us as set forth in Section 3, (d) we or our agent may peacefully repossess the Equipment without court order and you will not make any claims against us for damages or trespass or any other reason, and (e) we may exercise any other right or remedy available at law or in equity. You agree to pay all of our costs of enforcing our rights against you, including reasonable attorneys' fees. If we take possession of the Equipment, we may sell or otherwise dispose of it with or without notice, at a public or private sale, and apply the net proceeds (after we have deducted all costs related to the sale or disposition of the Equipment) to the amounts that you owe us. you agree that if notice of sale is required by law to be given, 10 days' notice shall constitute reasonable notice. You will remain responsible for any amounts that are due after we have applied such net proceeds.

10. **FINANCE LEASE STATUS.** You agree that if Article 2A-Leases of the Uniform Commercial Code applies to this Lease, this Lease will be considered a "finance lease" as that term is defined in Article 2A. By signing this Lease, you agree that either (a) you have reviewed, approved, and received a copy of the Supply Contract or (b) that we have informed you of the identity of the Supplier, that you may have rights under the Supply Contract, and that you may contact the supplier for a description of those rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A.

11. **ASSIGNMENT.** YOU MAY NOT ASSIGN, SELL, TRANSFER OR SUBLEASE THE EQUIPMENT OR YOUR INTEREST IN THIS LEASE. We may, without notifying you, sell, assign, or transfer this Lease and our rights in the Equipment. You agree that the new owner will have the same rights and benefits that we have now under this Lease but not our obligations. the rights of the new owner will not be subject to any claim, defense or set-off that you may have against us.

12. **PURCHASE OPTION; AUTOMATIC RENEWAL.** If no Default exists under this Lease, you will have the option at the end of the initial or any renewal term to purchase all (but not less than all) of the Equipment at the Purchase Option price shown on the front of this Lease, plus any applicable taxes. Unless the Purchase Option price is $1.00, you must give us at least 90 days written notice before the end of the initial lease term, or any renewal term, that you will purchase the Equipment or that you will return the Equipment to us. If you do not give us such written notice or if you do not purchase or deliver the Equipment in accordance with the terms of this Lease, this Lease will automatically renew for successive 3 month renewal terms. During such renewal term(s) the Lease Payment will remain the same. We may cancel an automatic renewal term by sending you written notice 10 days prior to such renewal term. If the Fair Market Value Purchase Option has been selected, we will use our reasonable judgment to determine the Equipment's in use and in place fair market value. If you do not agree with our determination of the Equipment's fair market value, the fair market value (in use and in place) will be determined at your expense by an independent appraiser selected by us. Upon payment of the Purchase Option price, we shall transfer our interest in the Equipment to you "AS-IS, WHERE-IS" without any representation or warranty whatsoever and this Lease will terminate.

13. **INDEMNIFICATION.** You agree to reimburse us for and if we request, to defend us against losses, damages, penalties, claims, suits and actions, whether based on a theory of strict liability or otherwise caused by or related to or in any manner arising from the Equipment.

14. **CREDIT INFORMATION.** YOU AUTHORIZE US OR ANY OF OUR AFFILIATES TO OBTAIN CREDIT BUREAU REPORTS, AND MAKE OTHER CREDIT INQUIRIES THAT WE DETERMINE ARE NECESSARY. ON YOUR WRITTEN REQUEST, WE WILL INFORM YOU WHETHER WE HAVE REQUESTED A CONSUMER CREDIT REPORT AND THE NAME AND ADDRESS OF ANY CONSUMER CREDIT REPORTING AGENCY THAT FURNISHED A REPORT. YOU ACKNOWLEDGE THAT WITHOUT FURTHER NOTICE WE MAY USE OR REQUEST ADDITIONAL CREDIT BUREAU REPORTS TO UPDATE OUR INFORMATION SO LONG AS YOUR OBLIGATIONS TO US ARE OUTSTANDING.

15. **MISCELLANEOUS.** You agree that the terms and conditions contained in this Lease make up the entire agreement between you and us regarding the lease of the Equipment. This Lease is not binding on us until we sign it. Any change in any of the terms and conditions of this Lease must be in writing and signed by us. You agree, however, that we are authorized, without notice to you, to supply missing information or correct obvious errors in this Lease. If we delay or fail to enforce any of our rights under this Lease, we will still be entitled to enforce those rights at a later time. All notices shall be given in writing by the party sending the notice and shall be effective when deposited in the U S Mail, addressed to the party receiving the notice at its address shown on the front of this Lease (or to any other address specified by that party in writing) with postage prepaid. All of our rights and indemnities will survive the termination of this Lease. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of time price differential or interest, as applicable, permitted to be charged or collected by applicable law, and any such excess will be applied to Lease Payments in inverse order of maturity, and any remaining excess will be refunded to you. If you do not perform any of your obligations under this Lease, we have the right, but not the obligation, to take any action or pay any amounts that we believe are necessary to protect our interests. You agree to reimburse us immediately upon our demand for any such amounts that we pay. If more than one Lessee has signed this Lease, each of you agrees that your liability is joint and several.

X  (Lessee's initials)

CIT Std. OP